IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

JOSEPH GIOVIA, et al.,          )
                                )
        Plaintiffs,             )
                                )
   v.                           )          1:13cv00577 (LMB/TCB)
                                )
PHH MORTGAGE CORPORATION, et    )
   al.,                         )
                                )
        Defendants.             )

## MEMORANDUM OPINION

Before the Court are defendants PHH Mortgage Corporation
and Federal National Mortgage Association's Motion to Dismiss
Plaintiffs' First Amended Complaint; Defendant Professional
Foreclosure Corporation of Virginia's Motion to Dismiss; and
Defendant Shapiro, Brown & Alt, LLP's Motion to Dismiss.

For the reasons that follow, defendants PHH Mortgage
Corporation and Federal National Mortgage Association's motion
to dismiss will be denied and defendants Professional
Foreclosure Corporation of Virginia and Shapiro, Brown & Alt,
LLP's motions to dismiss will be granted in part and denied in
part as moot.

## I.   BACKGROUND

Plaintiffs Joseph and Eileen Giovia are residents of a
property in Manassas, Virginia that is the subject of this
litigation.  First Amended Complaint ("Amend. Compl.") ¶ 1.

Defendant PHH Mortgage Corporation ("PHH") is a New Jersey corporation engaged in mortgage activities in Virginia; defendant Federal National Mortgage Association ("FNMA") is a government-sponsored enterprise chartered by the United States to support the secondary mortgage market by purchasing residential mortgages from private mortgage lenders and then holding or selling those mortgages; defendant Professional Foreclosure Corporation of Virginia ("PFC") is a Virginia professional corporation with its principal place of business in Virginia Beach, Virginia which regularly acts as a trustee on deeds of trust and conducts foreclosures on properties located in Virginia; and defendant Shapiro, Brown & Alt, LLP ("SBA") is a professional foreclosure law firm located in Virginia whose business is the collection of debts.  Id. at ¶¶ 2-5.[1]

Plaintiffs allege that on November 18, 2004, they refinanced their property with PHH, executing a promissory note ("the Note") in the amount of $344,000.00 and a Deed of Trust as a security interest on the property which named PHH as the

---

[1] Plaintiffs allege that PFC was "an alternate voice and alter ego" of SBA and that "they were one and the same" for purposes of the Amended Complaint.  Amend. Compl. ¶ 5.

lender.  Id. at ¶¶ 9-11; Exs. A (Note), B (Deed of Trust).[2]  FNMA purchased the loan on November 18, 2004, assigning it Fannie Mae Loan Number 1697644642.  Amend. Compl. ¶ 13.  Although FNMA purchased the loan from PHH, PHH retained responsibility for servicing the loan in accordance with its contract with FNMA and FNMA's Single Family Seller/Servicer Guide ("the Guide").  Id. at ¶ 14.  PHH's responsibilities included collecting payments from plaintiffs, communicating with plaintiffs regarding loss mitigation alternatives, and responding to any default, including commencing foreclosure and hiring and managing foreclosure counsel.  Id. at ¶¶ 14-17.

In 2011, after plaintiffs encountered financial difficulties and fell behind on their mortgage payments, they entered into a modification agreement with PHH on July 28, 2011, and made modified payments on their mortgage until plaintiff Eileen Giovia lost her job, when all payments stopped.  Id. at ¶¶ 23-25.  After Eileen Giovia returned to work in September or October of 2012, plaintiffs were able to make their monthly mortgage payments, but needed assistance in paying the arrears,

---

[2] The exhibits attached to plaintiffs' original Complaint are not attached to plaintiffs' Amended Complaint; however, the Court will refer to them as Exhibits A, B, and C to the Amended Complaint and cite them accordingly (e.g., "Amend. Compl. Ex. A").

which had arisen due to missed payments while Eileen Giovia was
unemployed.  Id. at ¶ 27.

Plaintiffs received a written notice from PHH in 2012 of
the existence of the Home Affordable Modification Program
("HAMP") and of FNMA's participation in that program.  Id. at
¶ 26.  In reliance on that notice from PHH, plaintiffs submitted
a HAMP application which provided financial and other
information as required by PHH.  Id. at ¶ 28.  From the fall of
2012 through January 8, 2013, plaintiffs made multiple telephone
contacts with PHH in an attempt to understand why the loan
modification process was taking so long.  Id. at ¶ 29.
Plaintiffs allege that their application was denied but that PHH
did not properly consider the hardship of plaintiff Eileen
Giovia's job loss under the Guide.  Id. at ¶ 30.

On October 1, 2012, while awaiting a decision on their
application, plaintiffs received a notice from SBA stating that
PHH was a "creditor" under the Fair Debt Collection Practices
Act ("FDCPA") to whom plaintiffs owed a debt.  Id. at ¶¶ 43, 44.
On December 18, 2012, plaintiffs received another letter from
SBA informing them that their property was scheduled for
foreclosure on January 8, 2013, and that PFC had been appointed
by PHH as the substitute trustee to perform the foreclosure
sale.  Id. at ¶¶ 34, 51, 52.  Plaintiffs contacted PFC to inform
its representatives that a loan modification application was

4

pending with PHH and to request a reinstatement amount; however, PFC did not answer their calls. Id. at ¶¶ 35, 53, 54.

On January 2, 2013, plaintiffs received a letter from PHH stating that their loan modification application had been received and that PHH would contact them if it needed any information. Id. at ¶ 36. Plaintiffs claim that PHH never requested that they supply any additional information. Id. at ¶ 37.

On January 4, 2013, plaintiffs contacted SBA and PFC regarding their loan modification application and the scheduled foreclosure and were told by PFC and SBA that they should contact PHH. Id. at ¶ 39, 40. When plaintiffs contacted PHH, they were told they would be contacted after their file was investigated. Id. at ¶ 40.

The Amended Complaint further alleges that during this time, plaintiffs had secured the funds to reinstate their loan and only needed to know what amount was required for reinstatement. Id. at ¶ 42. On January 7, 2013, plaintiffs again called PFC to inform its representatives that a loan modification was pending and that plaintiffs were prepared to bring their loan "current" if only they were provided the exact amount required. Id. at ¶¶ 55, 56. Plaintiffs were told that they would be contacted before the scheduled foreclosure on January 8, 2013; nevertheless, the foreclosure sale was held on

January 8, 2013, PHH was the highest bidder, and it assigned its bid to FNMA.  Id. at ¶¶ 56-58, 66.  Following the foreclosure sale, SBA, on behalf of FNMA, sent plaintiffs a five-day notice to vacate.  Id. at ¶ 73.  FNMA is now attempting to evict the plaintiffs from their property and FNMA has had plaintiffs served with an unlawful detainer summons seeking possession of their home.  Id. at ¶¶ 67, 74.[3]

On January 28, 2013, after the foreclosure sale, plaintiffs received a letter from PHH informing them that the "investor" – the owner of the loan – had not authorized a loan modification. Id. at ¶ 71.  Plaintiffs allege that this letter confirms that the modification review was not complete at the time of foreclosure and that PHH was not the loan creditor, as asserted by SBA in its October 1, 2012, letter.  Id. at ¶¶ 71, 72.

## II.   DISCUSSION

### A. The Amended Complaint

Plaintiffs' Amended Complaint alleges in eight counts various violations of federal and state law by defendants. Counts I, II, and III allege violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. ("FDCPA"). Specifically, Count I alleges that PFC and SBA violated

---

[3] On April 12, 2013, the Fairfax County General District Court granted possession to FNMA; plaintiffs noted their appeal to the Circuit Court and trial is set for December 16, 2013.  Amend. Compl. ¶ 74.

§ 1692g(a)(2) by falsely stating that PHH was the creditor on plaintiffs' loan. Amend Compl. ¶¶ 76-78. Count II alleges that PFC and SBA violated § 1692e by falsely stating that plaintiffs owed $384,021.70 on their loan as of October 1, 2012. Id. at ¶¶ 79-82. Count III alleges that PFC and SBA violated § 1692f(6) because they had no right to conduct the foreclosure sale or transfer the property given that they were not validly appointed as substitute trustees by the noteholder in compliance with the Deed of Trust. Id. at ¶¶ 83-91.

Count IV alleges that PHH (as FNMA's agent and acting on its own or through FNMA's agents SBA and PFC) breached the Deed of Trust by depriving plaintiffs of their rights, misrepresenting their intention to postpone the foreclosure, and foreclosing on the property even though plaintiffs were capable of performance and sought to reinstate the loan. Id. at ¶¶ 92-99.

Count V alleges breach of the implied covenant of good faith and fair dealing against PHH (again as FNMA's agent and acting on its own or through FNMA's agents SBA and PFC) for depriving plaintiffs of their right to reinstate their loan or cure their default, failing to provide a reinstatement amount, failing to provide reinstatement figures, representing that the foreclosure sale would be postponed, foreclosing on the property, failing to rescind the sale of the property via a

7

credit bid to FNMA, and moving forward with the closing with knowledge that the foreclosure was void.  Id. at ¶¶ 100-07.

Count VI alleges a breach of fiduciary duty by PFC and its agent SBA given their failure to timely provide plaintiffs with a reinstatement amount; their proceeding with the foreclosure sale with knowledge that plaintiffs were exercising their right to reinstatement; and their failure to rescind the foreclosure sale with knowledge that plaintiffs attempted to exercise their equitable right of redemption.  Id. at ¶¶ 108-19.

Count VII, which is asserted against all four defendants, seeks a declaratory judgment that the foreclosure sale and foreclosure deed are void or voidable and that plaintiffs are entitled to the appointment of a constructive trustee with instructions to convey title of the property to them subject to the Deed of Trust.  Id. at ¶¶ 120-24.[4]

Finally, Count VIII seeks equitable rescission of the foreclosure on the ground that PHH appointed a substitute trustee (PFC), accelerated the debt, and invoked the power of sale without authorization from FNMA and without satisfying conditions precedent to foreclosure.  Id. at ¶¶ 125-32.

---

[4] Plaintiffs have withdrawn Count VII as to PFC.  See Pls.' Opp. PFC at 14.  For the reasons discussed below, Count VII will be dismissed as to both PFC and SBA.

## B. Standard of Review

The standard of review for a motion to dismiss under Fed. R. Civ. P. 12(b)(6) requires the Court to assume the facts alleged in the complaint are true and draw all reasonable inferences in the plaintiff's favor.  Burbach Broadcasting Co. of Del. v. Elkins Radio Corp., 278 F.3d 401, 406 (4th Cir. 2002).  "Judgment should be entered when the pleadings, construing the facts in the light most favorable to the non-moving party, fail to state any cognizable claim for relief, and the matter can, therefore, be decided as a matter of law."  O'Ryan v. Dehler Mfg. Co., 99 F. Supp. 2d 714, 718 (E.D. Va. 2000).

"Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Accordingly, a party must "nudge[] their claims across the line from conceivable to plausible" to survive a Rule 12(b)(6) motion to dismiss.  Id. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  In addition, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the

9

complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Id. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

## C. PHH and FNMA's Motion to Dismiss

PHH and FNMA move to dismiss Counts IV, V, VII, and VIII, which are the only counts asserted against them, for the sole reason that plaintiffs did not give them notice of this action as required under paragraph 20 of the Deed of Trust.[5] Memorandum of Law in Support of Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint ("FNMA and PHH's Mem.") at 2, 3-4.

FNMA and PHH rely on Niyaz v. Bank of America, No. 1:10cv00796, 2011 WL 63655, at *2 (E.D. Va. Jan. 3, 2011), aff'd, 442 F. App'x 838 (4th Cir. 2011); see also Johnson v. Countrywide Home Loans, Inc., No. 1:10cv01018, 2010 WL 5138392,

---

[5] Paragraph 20 of the Deed of Trust states that

> [n]either Borrower nor Lender may commence, join, or be joined to any judicial action . . . that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party . . . of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. . . . The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 . . . shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

Amend. Compl. Ex. B at ¶ 20.

at *1-2 (E.D. Va. Dec. 10, 2010) (dismissing, for lack of the requisite notice, claims involving potential violations of the Truth in Lending Act, the Real Estate Settlement Procedure Act, the Fair Debt Collection Practices Act, and the Fair Credit Reporting Act). In Niyaz, the plaintiff asserted that the lender breached the deed of trust; however, because the plaintiff did not provide notice in accordance with a provision of the deed of trust identical to the one at issue here, the court dismissed the complaint.[6]

Relying on paragraph 22 of the Deed of Trust,[7] plaintiffs oppose defendants' argument by claiming that defendants violated the Deed of Trust by not providing notice of their rights to reinstate after acceleration or to bring a court action to assert any defenses to acceleration and sale before the January

---

[6] Niyaz, while instructive in some respects, was dismissed on defendant's motion for summary judgment and not on a motion to dismiss under Fed. R. Civ. P. 12(b)(6).

[7] Paragraph 22 of the Deed of Trust states that

Lender shall give notice to the Borrower prior to acceleration following [default] . . . the notice shall specify (a) the default, (b) the action required to cure the default, (c) the date by which the default must be cured, and (d) that the failure to cure . . . may result in acceleration . . . [t]he notice shall further inform the Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale.

Amend. Compl. Ex. B at ¶ 22.

11

8, 2013, foreclosure.  Plaintiffs' Opposition to Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint ("Pls.' Opp. FNMA and PHH") at 1, 2-5.  Plaintiffs argue that after the foreclosure, the sales contract was completed, leaving no reasonable period of time to wait before filing a suit to challenge the allegedly invalid sale.  Id. at 3.  Plaintiffs also argue that their Amended Complaint makes it "abundantly clear" that defendants were the first to breach the Deed of Trust and "[a]s the first to breach the contract, FNMA may not enforce its terms."  Id. at 3-4; see Bennett v. Bank of Am., N.A., No. 3:12cv00034, 2012 WL 1354546, at *5 (E.D. Va. Apr. 18, 2012) (stating that "[u]nder Virginia law, a party who first materially breaches a contract cannot enforce that contract") (citing Horton v. Horton, 487 S.E.2d 200, 203 (Va. 1997)).  In addition, plaintiffs dispute the authenticity of the notice of default dated May 2, 2012, that PFC purportedly sent to them. Id. at 5.

FNMA and PHH respond that they complied with their obligations under the Deed of Trust because PHH did, in fact, send a notice in accordance with Paragraph 22 - the notice attached to PFC's motion to dismiss.  See PFC's Memorandum in Support of Its Motion to Dismiss ("PFC's Mem.") at Ex. C.  FNMA and PHH further argue that had plaintiffs complied with their

12

obligations under Paragraph 20, PHH could have re-sent that notice to them and avoided this litigation.

By asserting the notice requirement, defendants are asserting an affirmative defense which is properly considered in a motion for summary judgment and not in a motion to dismiss. Bennett, 2012 WL 1354546, at *5 (quoting Richmond, Fredericksburg & Potomac R.R. v. Forst, 4 F.3d 244, 250 (4th Cir.1993)); see also Townsend v. Fed. Nat. Mortgage Ass'n, 923 F. Supp. 2d 828, 833 (W.D. Va. 2013) (declining to dismiss where the amended complaint did not indicate whether plaintiffs sent written notice before commencing action as required by the deed of trust).

Moreover, there is a factual dispute as to whether the notice to plaintiffs complies with the requirements of paragraph 22 of the Deed of Trust.  This dispute is more properly resolved in a motion for summary judgment.  For these reasons, and because this is the sole basis for FNMA and PHH's motion to dismiss, the Court will deny defendants' motion and plaintiffs' claims under Counts IV, V, VII, and VIII will proceed.

### D. PFC's Motion to Dismiss

Plaintiffs assert four counts against both PFC and SBA – Counts I, II, III, and VI.  Although PFC and SBA have filed separate motions to dismiss, SBA's motion incorporates PFC's arguments as to Counts I, II, and III, while asserting its own

argument as to Count VI. For that reason, the following analysis of PFC's Motion to Dismiss Counts I, II, and III applies equally to SBA's Motion to Dismiss.

### 1. Count I (violation of the FDCPA, 15 U.S.C. § 1692g(a)(2))

In Count I, plaintiffs allege that PFC and SBA's October 1, 2012, correspondence misidentified PHH as the "creditor" to whom their debt was owed, thereby violating 15 U.S.C. § 1692g(a)(2), which requires that "a debt collector shall . . . send the consumer a written notice containing . . . the name of the creditor to whom the debt is owed."

PFC moves to dismiss this count on the ground that, as the servicer of plaintiffs' loan, PHH was a "creditor" within the meaning of federal law because a "creditor" under the FDCPA includes loan servicers who acquire servicing rights before default, as well as the loan owners.[8] PFC's Mem. at 4-5, 6-9.

PFC further argues that plaintiffs have not alleged that their loan was in default when PHH obtained its servicing rights and have admitted that PHH was the lender when the loan originated in November 2004 and thereafter retained its

---

[8] Under 15 U.S.C. § 1692a(4), "[t]he term 'creditor' means any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another."

servicing rights when the loan was assigned to FNMA.  PFC's Mem. at 5-6.  PFC argues that as PHH is both the original lender and the loan servicer, PHH is empowered to receive payments and foreclose and is, therefore, a "creditor."  PFC's Reply in Support of Its Motion to Dismiss ("PFC's Reply") at 1-2, 9.

Plaintiffs respond that PFC misidentified the entity to whom plaintiffs' debt was owed because FNMA was in fact the secured creditor.  Opposition to Certain Defendant's Motion to Dismiss ("Pls.' Opp. PFC") at 3.  Asserting that the purpose of 15 U.S.C. § 1692g is to provide borrowers with timely notice of their rights, in part by properly identifying the lender, plaintiffs argue that they were not notified of their rights in a timely manner as they did not learn of the true identity of the entity to whom the debt was owed until after the property was sold at the foreclosure sale by PFC, who at that time "divulged" the true identity of the lender to be FNMA.  Id. at 3-4.

As to PFC's argument that PHH was a "creditor" within the meaning of the FDCPA, plaintiffs argue that even if that were true (which plaintiffs do not concede), it does not mean that as a "creditor" PHH was also the entity "to whom the debt is owed." Id. at 5-6.

Although the precise issue has apparently not been addressed by the Fourth Circuit, the overwhelming weight of

15

persuasive authority from the other circuit courts as well as district courts in this Circuit compel the conclusion that the terms "creditor" and "debt collector" under the FDCPA are mutually exclusive. See, e.g., Bridge v. Ocwen Fed. Bank, FSB, 681 F.3d 355, 359 (6th Cir. 2012); F.T.C. v. Check Investors, Inc., 502 F.3d 159, 173 (3d Cir. 2007) (stating that "as to a specific debt, one cannot be both a 'creditor' and a 'debt collector,' as defined in the FDCPA, because those terms are mutually exclusive"); Schlosser v. Fairbanks Capital Corp., 323 F.3d 534, 536 (7th Cir. 2003) (stating that "[i]f the one who acquired the debt continues to service it, it is acting much like the original creditor that created the debt. On the other hand, if it simply acquires the debt for collection, it is acting more like a debt collector"); Bradford v. HSBC Mortgage Corp., 829 F. Supp. 2d 340, 348 (E.D. Va. 2011) (concluding that "[b]ecause Ally has only ever been a person 'to whom a debt is owed' with respect to the Note . . . Ally cannot be a debt collector with respect to the Note").

In all of these cases, determining which of the two definitions applies depends on the status of the debt at the time it was acquired, which is governed by 15 U.S.C. § 1692a(6)(F)(iii). Under that provision, the term "debt collector" does not include "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due

another to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person."

Here, plaintiffs affirmatively allege that PHH was the originator of the loan and that PHH retained its servicing rights after FNMA's purchase of the loan in November 2004. See Amend. Compl. ¶¶ 10-18, Exs. A, B.  Because it acquired its servicing rights before plaintiffs' default, PHH is, therefore, a "creditor" under the plain language of the statute and, as a matter of law, as a "creditor" it cannot also be a "debt collector."  Consequently, PFC's notice to plaintiffs identifying PHH (rather than FNMA) as the "creditor" to whom plaintiffs owed a debt did not misidentify the party to whom the debt was owed and, therefore, does not give rise to a plausible claim to relief against either PFC or SBA under 15 U.S.C. § 1692g(a)(2).  For these reasons, Count I will be dismissed as to both defendants.

### 2. Count II (violation of the FDCPA, 15 U.S.C. § 1692e)

Count II alleges that PFC and SBA violated 15 U.S.C. § 1692e by stating in their October 1, 2012 correspondence that the amount plaintiffs owed on the debt was $384,021.70.

Under 15 U.S.C. § 1692e(2), "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt . . . [including t]he

false representation of . . . the character, amount, or legal status of any debt."

PFC argues that plaintiffs merely "speculate" or "surmise" that the debt was misstated and do not satisfy their burden to assert a material misrepresentation. PFC's Reply at 6-7.  PFC also points out that plaintiffs do not allege that they were current with their mortgage payments. PFC's Mem. at 17-19.  To the contrary, the Amended Complaint concedes that plaintiffs were in default.  See Amend. Compl. ¶¶ 23, 25, 27.

Plaintiffs respond that the facts alleged in the Amended Complaint (¶¶ 9, 11, 24, 80-81) support the allegation that PFC's October 1, 2012, correspondence misstated the amounts owed, and that although defendants may be able to show how the amount stated was calculated, that evidence is not properly before the Court in their motions to dismiss.  PFC's Mem. at 6.

To determine if a violation of 15 U.S.C. § 1692e has occurred the Fourth Circuit applies the "least sophisticated consumer" standard.  Lembach v. Bierman, No. 12-1723, 2013 WL 2501752, at *4 (4th Cir. June 12, 2013) (citing United States v. Nat'l Fin. Servs., Inc., 98 F.3d 131, 135-36 (4th Cir. 1996)).  Under this standard, a false statement that would not mislead the "least sophisticated consumer" is not actionable; further, "to plead a claim of false representation under the FDCPA, the party must show that the representations are material."  Id.;

see also Warren v. Sessoms & Rogers, P.A., 676 F.3d 365, 374
(4th Cir. 2012), as amended (Feb. 1, 2012). Consequently, the
mere allegation that a statement is false is insufficient to
state a claim for false representation under the FDCPA.

Here, plaintiffs allege only that PFC and SBA "falsely
stat[ed] that Plaintiffs owed $384,021.70 in its [sic] October
1, 2012 correspondence." Amend. Compl. ¶ 80. Although the
allegedly false statement is connected to the debt at issue,
plaintiffs fail to allege how they were misled by that
statement, if at all. Nor can any favorable inferences be drawn
from the facts alleged (and taken as true) that plaintiffs were
misled or deprived of information that would have helped them
"intelligently" choose a course of action with respect to the
debt. See Hahn v. Triumph P'ships LLC, 557 F.3d 755, 757-58
(7th Cir. 2009) (reasoning that the FDCPA "is designed to
provide information that helps consumers to choose
intelligently"). For these reasons, Count II against PFC and
SBA will be dismissed as to both defendants.

### 3. Count III (violation of the FDCPA, 15 U.S.C. § 1692f(6))

In Count III, plaintiffs allege that PFC and SBA violated
15 U.S.C. § 1692f(6) because PFC was not a validly appointed
substitute trustee; therefore, neither PFC nor SBA had a right
to conduct the foreclosure sale and transfer plaintiffs'
property. Section 1692f(6) states that "[a] debt collector may

not use unfair or unconscionable means to collect or attempt to collect any debt . . . [including t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property if . . . there is no present right to possession of the property claimed as collateral through an enforceable security interest."

Defendants move to dismiss Count III under Virginia law, which provides that a foreclosure may be prosecuted by any beneficiary under a deed of trust, including the lender, a nominee of the lender, the promissory noteholder, the noteholder's agent, the loan servicer, or a non-holder in possession with the rights of a holder. PFC's Mem. at 9-11; PFC's Reply at 5. The only lender identified in the loan documents at issue is PHH, which, as the servicer of plaintiffs' loan, had the right to proceed with foreclosure. Id. at 12; 5 (citing Amend. Compl. Exs. A, B).

Plaintiffs respond by arguing that under the express terms of the Deed of Trust, only the lender may invoke the power of sale and appoint a substitute trustee. Pls.' Opp. PFC at 6-8. As the loan servicer, PHH was limited to collecting periodic payments and performing other servicing obligations under the Note, the Deed of Trust, and applicable law – obligations that are "radically different from the right to invoke the power of sale." Id. at 8-9. Simply put, plaintiffs argue that to invoke

the power of sale or appoint substitute trustees, the appointer
must be the "lender" and PHH is not the "lender" here. Thus, a
condition precedent to the foreclosure was not satisfied and
PHH's actions in appointing PFC are void, as are its actions in
foreclosing on plaintiffs' property. Id. at 9.[9]

Plaintiffs' claim under Count III is premised on the notion
that under the plain language of the Deed of Trust, PHH as the
loan servicer could not appoint substitute trustee PFC or invoke
the power of sale. The Deed of Trust does not support that
argument. The Deed of Trust states in Paragraph 16 that it
"shall be governed by federal law and the law of the
jurisdiction in which the Property is located." The Deed of
Trust also states that the Note may be sold and that such sale
may result in a change of the loan servicer, the entity who
collects payments due under the Note and performs other loan
servicing obligations (Paragraph 20); that if the Note is sold

---

[9] Plaintiffs allege in Count III that the loan was never
accelerated under the Deed of Trust and the power of sale was
not invoked because only FNMA had the power to accelerate the
loan and invoke the power of sale. Amend. Compl. ¶¶ 87-88.
Plaintiffs also allege that PHH failed to comply with the Guide
and that FNMA and PHH failed to comply with the notice
provisions of the Deed of Trust; therefore, PHH was not
authorized to accelerate the loan and invoke the power of sale
on behalf of FNMA. Id. at ¶ 88. Because these are allegations
asserted against FNMA and PHH that are both independent of the
allegations asserted against PFC and SBA under Count III and
duplicative of allegations asserted against FNMA and PHH under
Counts IV, V, VII, and VIII, they need not be addressed here.

and the purchaser and loan servicer are different entities, the purchaser must expressly assume any loan servicing obligations (Paragraph 20); that after notice of default and an opportunity to cure, the lender may require immediate payment and invoke the power of sale (Paragraph 22); and that the lender may remove and appoint successor trustees (Paragraph 24).

Under Va. Code. § 55-59(9), "[t]he party secured by the deed of trust . . . shall have the right and power to appoint a substitute trustee or trustees for any reason." Although this language neither explicitly permits nor prohibits the agent of the secured party from appointing a substitute trustee, "courts have not read this language to mean that only the secured party or noteholder itself may appoint a substitute trustee, and have instead upheld the right of loan servicing entities, acting as agents, to do so." Sheppard v. BAC Home Loans Servicing, LP, No. 3:11cv00062, 2012 WL 204288, at *8 n.9 (W.D. Va. Jan. 24, 2012) (emphasis in original) (citing Larota-Florez v. Goldman Sachs Mortgage Co., 719 F. Supp. 2d 636, 641 (E.D. Va. 2010), aff'd, 441 F. App'x 202 (4th Cir. 2011) (finding that because a loan servicer "has the right to collect payments on behalf of the holder and the right to foreclose upon default" its appointment of a substitute trustee under the deed of trust "was authorized as a matter of contract and agency law")).

Plaintiffs ask the Court to interpret the word "Lender" in the Deed of Trust narrowly. This request is unjustified, given both the authority cited above and the language in the Deed of Trust contemplating an agency relationship between the secured party and loan servicer (or servicers) who retains the mortgage loan servicing obligations.

It is uncontested that PHH was both the originator of the loan (the original "Lender" under the Deed of Trust) and the original loan servicer. See Amend. Compl. ¶¶ 10, 12. Plaintiffs do not allege that when the loan was sold to FNMA, FNMA acquired anything other than the Note. In fact, plaintiffs allege that after the sale to FNMA,

> PHH was given the responsibility of performing certain functions (commonly known in the mortgage industry as "servicing") related to Plaintiffs loan in accordance with its contract with FNMA. Among its responsibilities as the servicer, PHH was responsible for collecting payments from Plaintiffs, communicating with Plaintiffs regarding loss mitigation alternatives, and responding to any default by Plaintiffs, including by hiring and managing foreclosure counsel.

Id. at ¶ 14. Plaintiffs also allege that the Guide "gave PHH, on behalf of FNMA, the authority to commence foreclosure on Plaintiffs' home in case of their default on their obligations under the Deed of Trust." Id. at ¶ 16. Moreover, plaintiffs proffer no authority to support their position that PHH's loan servicing obligations did not include the right to appoint a

substitute trustee to act in its capacity as an agent of the noteholder, FNMA.  Because PHH, as the servicer of the loan, was empowered to initiate foreclosure proceedings, it had the authority to appoint PFC to conduct the foreclosure; therefore, Count III will be dismissed.[10]

### 4. Count VI (Breach of Fiduciary Duty)

Count VI alleges that PFC breached the fiduciary duty owed to plaintiffs under the Deed of Trust, a duty that plaintiffs allege includes attendant duties of impartiality, good faith, and the duty to invoke the aid and direction of a court of equity in the execution of a trust.

PFC first argues that its duties as a trustee are narrowly defined by the Deed of Trust and that under Virginia law, its duties could not include those alleged by plaintiffs.  PFC's

---

[10] Whether plaintiffs attempt to assert a claim under the FDCPA against PHH in Count III is unclear.  See Amend. Compl. ¶ 88 ("PHH was not authorized to accelerate and invoke the power of sale on behalf of FNMA until all notices required by the Deed of Trust were sent and all options as designated in the Guide were pursued and exhausted") (emphasis in original).  As discussed above, PHH is a "creditor" and not a "debt collector" and is therefore not subject to liability under the FDCPA.  Nor can PHH, as a "creditor," be held vicariously liable for any FDCPA violations committed by PFC or SBA.  See Bradford v. HSBC Mortgage Corp., 829 F. Supp. 2d 340, 348 (E.D. Va. 2011) (concluding that "a creditor cannot incur vicarious liability for FDCPA violations by an independent debt collector that acts on the creditor's behalf"); Washington v. CitiMortgage, Inc., No. 3:10cv00887, 2011 WL 1871228, at *13 (E.D. Va. May 16, 2011) (holding that a "creditor is not liable under a respondeat superior theory for violations of the FDCPA by independent debt collectors hired by the creditor.").

Mem. at 19-20.  Under Paragraph 22 of the Deed of Trust, PFC's
duties are only those related to the procedure of the sale and
do not address PHH's entitlement to foreclose.  Id. at 20-21;
PFC's Reply at 7-8.  Further, PFC argues that plaintiffs cannot
impose on it the responsibility for rights such as reinstatement
within five days of the sale or the setting aside of the sale
itself, because plaintiffs could not invoke these rights under
the Deed of Trust against a substitute trustee.  PFC's Mem. at
21.

Although they cannot point to explicit language in the Deed
of Trust, plaintiffs argue that PFC had a duty to take measures
assuring that it did not proceed with a foreclosure until the
remedy of foreclosure accrued, and breached this duty when it
proceeded with the foreclosure sale fully aware of the loan
modification process and the plaintiffs' desire to reinstate the
loan.  Pls.' Opp. PFC at 12-13.  Plaintiffs assert that PFC
breached its obligations under the Deed of Trust out of a desire
for pecuniary gain, placing its interests before those of the
plaintiffs, and failed to turn to the courts to dispel any cloud
on the property's title before proceeding with the foreclosure
sale.  Id.

Although a deed of trust gives rise to certain fiduciary
duties, Goodrow v. Friedman & MacFadyen, P.A., No. 3:11cv00020,
2012 WL 6725617, at *6 (E.D. Va. Dec. 27, 2012); Carter v.

Countrywide Home Loans, Inc., No. 3:07cv00651, 2008 WL 4167931, at *11 (E.D. Va. Sept. 3, 2008), it is "treated under the same principles as [a] contract[], and the trustee only owes those duties that are listed in the deed of trust itself." Carter, 2008 WL 4167931, at *11. A trustee under a deed of trust has no due diligence duty. Horvath v. Bank of New York, N.A., No. 1:09cv01129, 2010 WL 538039, at *1 (E.D. Va. Jan. 29, 2010) (dismissing breach of trustee's fiduciary duty claim and finding that plaintiff did not allege any such duties existed in the deed of trust or facts establishing a duty of impartiality). Further, there is no common law duty of impartiality incumbent on a trustee. Goodrow, 2012 WL 6725617, at *8 (citing Sheppard v. BAC Home Loans Servicing, LP, No. 3:11cv00062, 2012 WL 204288, at *7 (W.D. Va. Jan. 24, 2012) (refusing to find a common law fiduciary duty of impartiality owed to borrowers by trustees)).

Plaintiffs do not rebut defendant PFC's contention that its duties as fiduciary are defined solely by the Deed of Trust, and point to no part of the Deed of Trust expressly supporting its allegations that PFC breached those duties other than Paragraph 19, which speaks only to acceleration, cancellation of acceleration, and the like with regard to the "borrower" and the "lender." See Amend. Compl. Ex. B at ¶ 19. Indeed, it appears that PFC's only affirmative duty under the Deed of Trust with

respect to plaintiffs was its duty to give them notice of the foreclosure sale – notice that plaintiffs admit they received. See Amend. Compl. ¶ 34 ("Plaintiff [sic] received a letter dated December 18, 2012, from Defendant SB&A as counsel for PFC informing Plaintiff [sic] that the Property was scheduled for foreclosure on January 8, 2013."). Because plaintiffs have not alleged a breach of any duty arising out of the Deed of Trust and no duty of impartiality is recognized at common law, Count VI will be dismissed as to PFC.

### E. SBA's Motion to Dismiss Count VI

SBA raises several arguments to support dismissal of Count VI. First, it argues that plaintiffs' breach of fiduciary claim fails because as a law firm, SBA is not a trustee, and therefore has no independent fiduciary duty to plaintiffs (even assuming that one is alleged in the Amended Complaint). SBA's Memorandum in Support of Its Motion to Dismiss ("SBA's Mem.") at 1, 2-3. Next, SBA maintains that under Virginia law, it cannot be held liable under a "derivative duty" theory because where there is no privity, there can be no breach. Id. at 2-3. Similarly, because the scope of duties asserted by plaintiffs arises out of the Deed of Trust, which is a contract, SBA cannot be held liable for any breach of the Deed of Trust by PFC whose duties, as previously explained, are limited only to those expressly set out in the Deed of Trust itself. Id. at 3-4.

Third, SBA argues that to the extent it is alleged to be the agent of PFC, because PFC is a disclosed principal, SBA cannot incur any contract liability under the Deed of Trust. Id. at 4.  Finally, SBA argues that plaintiffs' claims for breach sound in contract rather than in tort; therefore, plaintiffs may not recover tort damages, including punitive damages.  Id. at 4-5.

In response, plaintiffs argue that their claim for breach of fiduciary duty against SBA involves loss of property, a loss to which the common law privity rule is inapplicable. Opposition to Certain Defendant's Motion to Dismiss ("Pls.' Opp. SBA") at 1-2.  Plaintiffs further argue that notwithstanding the lack of a contractual relationship between PFC, SBA, and plaintiffs, a "de facto" fiduciary relationship between them exists based on PFC's assumption of its role as substitute trustee (however improperly appointed), and PFC and SBA stand on the same footing regarding their breach of the common law duties arising from that fiduciary relationship.  Id. at 3-5.

In addition, plaintiffs argue that PFC and SBA have breached common law duties that are independent from the duties that may be imposed under the Deed of Trust.  These common law duties included the obligation to act impartially and to seek the assistance of a court of equity to aid in the just execution

of their trust, particularly where, as here, there were doubts as to plaintiffs' debt.  Id. at 5-7.

SBA's arguments here are well taken.  SBA is not a party to the Deed of Trust, much less a trustee, and plaintiffs allege no facts plausibly supporting any claim for breach of a fiduciary duty arising out of the Deed of Trust for the reasons stated above regarding PFC's motion to dismiss Count VI.

Because there is no privity between plaintiffs and SBA there can be no claim for any breach of any duty (fiduciary or otherwise) in contract.  SBA is not the lender, the noteholder, the loan servicer, the trustee, or the substitute trustee, and no attorney-client relationship existed between it and plaintiffs.  Indeed, not even PFC, SBA's principal, is a party to the contract.  Accordingly, there is no basis upon which plaintiffs may allege the breach of any duty against PFC's agent, SBA.  For these reasons, Count VI will be dismissed as to SBA.

### III.   CONCLUSION

For the reasons stated above, defendants FNMA and PHH's Motion to Dismiss will be DENIED as to Counts IV, V, VII, and VIII; defendant PFC's Motion to Dismiss will be GRANTED as to Counts I, II, III, and VI, and DENIED AS MOOT as to Count VII; and defendant SBA's Motion to Dismiss will be GRANTED as to Counts I, II, III, and VI, and DENIED AS MOOT as to Count VII.

An appropriate Order shall issue with this Memorandum Opinion.

Entered this 13th day of November, 2013.

Alexandria, Virginia

/s/

Leonie M. Brinkema
United States District Judge